Donald H. BROWN, John Markowicz and Paul Pushlar, Plaintiffs,

v.

Francis COSTELLO, Town of Fenner, Michael Larkin, Lynn Keator, and David Shephard, Defendants.

No. 93–CV–149.

United States District Court, N.D. New York.

Oct. 31, 1995.

Donald H. Brown, Chittenango, NY, Plaintiff, pro se.

John Markowicz, Boukville, NY, Plaintiff, pro se.

Paul Pushlar, Cazenovia, NY, Plaintiff, pro se.

Sugarman, Wallace, Manheim & Schoenwald, Syracuse, NY, for Defendants; Paul M. Gonzalez, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

### INTRODUCTION

Plaintiffs, Donald Brown, John Markowicz and Paul Pushlar, commenced this suit on February 1, 1993, alleging that the Town of Fenner, Francis Costello, Lynn Keator, David Shephard, and Michael Larkin violated their constitutional rights.[1] Specifically, plaintiffs assert that

> [t]his is an action for damages to recover for property confiscated by the above-named Defendants in violation of the unreasonable seizure clause of the Fourth Amendment, the deprivation of liberty and property clause of the Fifth Amendment, the private property taken for public use without just compensation clause of the Fifth Amendment, the nature and cause of the accusation clause of the Sixth Amendment, the excessive fines imposed clause of the Eighth Amendment, the cruel and unusual punishments clause of the Eighth Amendment, the due process of law clause of the Fourteenth Amendment, and the equal protection clause of the Fourteenth Amendment.

In a nutshell, the Defendants mis-used legal procedure in order to confiscate from Plaintiff Donald H. Brown the valued collection of the three Plaintiffs and other friends, which had been building since 1950 and was stored on the property of the one friend, Plaintiff Brown, and his father, giving rise to this action pursuant to 42 U.S.C. § 1983 and related statutes. A minimum of $2,000,000.00 in damages is sought.

See Plaintiffs' Second Amended Complaint at 1–2.

Plaintiffs invoke the jurisdiction of this court pursuant to 42 U.S.C. §§ 1983, 1985(3); 28 U.S.C. §§ 1331, 1343(1), 2201, 2202 and 1651; and the Fourth, Fifth, Sixth, Seventh, Eighth and Fourteenth Amendments and their intrinsic human rights. See id. at 2. In addition, plaintiffs request that the court exercise its pendent jurisdiction over their state law claims which allege violations of Article 1, Sections 7(a) and 12, and Article 2, Section 6 of the New York State Constitution.[2] See id. at 8.

Plaintiffs assert four separate causes of action.[3] In their first cause of action, plaintiffs contend that "[t]he confiscation of a 40-year collection of vehicles and other items by the Defendants is an unreasonable seizure of Plaintiffs' property without just compensation, in violation of the Fourth and Fifth Amendments, U.S. Constitution and violates Article I Section 7(a) and 12 of the New York Constitution." See Plaintiffs' Second Amended Complaint at 8. In their third cause of action, which is very similar to their first, plaintiffs allege that they "[w]ere denied due

1. During the relevant time frame, Francis Costello was the Supervisor of the Town of Fenner; Lynn Keator was the Zoning Officer for the Town of Fenner; David Shephard was the Town Clerk for the Town of Fenner; and Michael Larkin was a court-appointed receiver. It appears from their complaint that plaintiffs are suing these defendants in their individual capacities only.

2. Article 1, Section 7(a) of the New York State Constitution provides that "[p]rivate property shall not be taken for public use without just compensation." N.Y. Const. art. I, § 7(a). Article 1, Section 12 of the New York State Constitution provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." N.Y. Const. art. I, § 12.

Plaintiffs refer to Article 2, Section 6 of the New York State Constitution. It is clear, however, that they are relying upon Article 1, Section 6 which provides, in pertinent part, that "[n]o person shall be subject to be twice put in jeopardy for the same offense; ..." N.Y. Const. art. I, § 6.

3. Plaintiffs combine their federal and state law claims within the same causes of action.

process of law and suffered unreasonable seizure of property and private property taken for public use without just compensation, when valuable items were taken and again when Defendants secured an order for said items to be sold on the LOCAL market." *See id.* at 10.

Plaintiffs' second cause of action includes a number of claims related to Mr. Brown's indictment by a Madison County Grand Jury in December 1987 for unlicensed vehicle dismantling and unlicensed junkyard operation. *See* Plaintiffs' Second Amended Complaint at 5. Plaintiffs contend that this indictment was obtained through the use of the perjured testimony of defendant Shephard. *See id.* Plaintiffs assert, therefore, that the indictment is void. *See id.* at 9. In addition, plaintiffs contend that the indictment is confusing and that if Counts I and II of that indictment are the same, then he was placed in jeopardy twice for the same offense in violation of the double jeopardy clause of the Fifth Amendment of the United States Constitution and Article 2 [sic], Section 6 of the New York State Constitution. *See id.* Alternatively, plaintiffs argue that if Count II of the indictment is a misdemeanor, the indictment is void. *See id.* Moreover, plaintiffs contend that the statute(s) under which Mr. Brown was convicted are void for vagueness as enacted and applied and that because his constitutional rights were violated, his sentence and conviction are a nullity. *See id.* at 9–10.

Finally, plaintiffs' fourth cause of action asserts that while incarcerated Mr. Brown was forced to inhale cigarette smoke in violation of New York Public Health Law § 1399–n. *See* Plaintiffs' Second Amended Complaint at 10. Furthermore, plaintiffs contend that such involuntary exposure to environmental tobacco smoke constituted a denial of due process, trespass, and battery, and posed an unreasonable risk of serious damage to his future health, thus subjecting him to cruel and unusual punishment in violation of the Eighth Amendment. *See id.* at 10–11.

As a result of these alleged constitutional violations, plaintiffs request, *inter alia,* a de-

claratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that "[t]he acts of the Defendants violated and continue to violate the Constitutional, statutory, and other rights of the Plaintiffs[,]" and "[d]eclaring New York Law § 415–a ... New York General Municipal Law, Public Health and Safety § 136 ... New York State Uniform Code § 1242.10b ... [and] Town of Fenner Local Law # 1 of February 7, 1968 unconstitutional, or as applied in this case." *See* Plaintiffs' Second Amended Complaint at 12–13. Plaintiffs also seek compensatory and punitive damages for the vehicles confiscated as well as compensatory damages for each day Mr. Brown spent in jail and was forced to breathe second hand smoke. *See id.* at 11. Finally, plaintiffs seek an order voiding Mr. Brown's felony conviction and granting the return to him of his voting privileges, pistol permit, and confiscated firearms. *See id.* at 12.

Discovery having been completed, defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants' motion is based upon several grounds, depending upon the particular cause of action or defendant at issue. Basically, they assert that they are entitled to such relief based upon the doctrines of res judicata/collateral estoppel, absolute quasi-judicial immunity, absolute legislative immunity, and failure to state a claim.

In opposition to this motion, plaintiffs, all of whom are proceeding *pro se,* filed a joint memorandum of law, affidavit and statement of facts in dispute. Their opposition focuses almost exclusively upon defendant Larkin's claim of entitlement to absolute quasi-judicial immunity.

## BACKGROUND

Mr. Brown, a farmer by trade, had situated on his property, among other things, automobiles, automobile parts, and other miscellaneous items, including some farm equipment. Mr. Pushlar and Mr. Markowicz apparently owned some of the items which are at issue in this suit which they stored on Mr. Brown's property with his consent.[4] Al-

---

**4.** There is nothing in the record which identifies exactly which of the items in question Mr. Push-

lar and Mr. Markowicz owned.

though Mr. Brown and his fellow plaintiffs characterized these items as part of a "valuable collection," the governmental entities involved concluded otherwise.

As a result of these items being located on his property, Mr. Brown was indicted by a Madison County Grand Jury in December 1987 for unlicensed vehicle dismantling and unlicensed junkyard operation. *See* Plaintiffs' Second Amended Complaint at 5. A jury found him guilty of these offenses after a trial before Judge Kevin M. Dowd. *See* Defendants' Exhibit A. As a result of this conviction, on August 12, 1988, Mr. Brown was sentenced. *See id.* On January 9, 1989, he was resentenced. There is nothing in the record to indicate that Mr. Brown appealed his conviction or either of his sentences.

Subsequent to Mr. Brown's criminal prosecution, the Town of Fenner ("Town") enacted a resolution to invoke civil remedies against Mr. Brown to enjoin him from operating an unlawful junkyard in violation of Local Law # 1. *See* Costello Affidavit at ¶ 8. As a result of this resolution, the Town, through its attorneys, served a summons and complaint upon Mr. Brown on or about April 6, 1989. *See id.* at ¶ 9 and Defendants' Exhibit F. Mr. Brown neither interposed a proper answer nor a motion to this complaint. *See* Defendants' Exhibit I. Therefore, the Town moved for a default judgment. *See* Defendants' Exhibit H. The court granted this motion by decision dated August 17, 1989, and order dated September 25, 1989. *See* Defendants' Exhibit I. This order directed Mr. Brown to "immediately cease and desist operating an unlicensed and illegal automobile junkyard at premises presently occupied by [Mr. Brown] ..." *See id.* Furthermore, the court permanently enjoined Mr. Brown from "maintaining and operating said automobile junkyard upon such premises; ..." *See id.* Finally, the court ordered Mr. Brown within thirty days to bring his property into compliance with Local Law # 9 "by either removing and disposing of the automobiles and other junk now situate thereon in a lawful and proper manner or by obtaining a proper and lawful permit to operate such junkyard pursuant to Local law number 9 of

the Town of Fenner." *See id.* Mr. Brown did not appeal this order or the entry of a default judgment against him.

Mr. Brown failed to comply with the court's order. Therefore, the Town moved for an order punishing him for contempt of court. *See* Defendants' Exhibit K at 1. In response to this motion, Mr. Brown filed a lengthy document titled "answer under Protest" which the court characterized as an "[i]ndicat[ion] that [Mr. Brown] refuses and will continue to refuse to submit himself to the jurisdiction and orders of this Court." *See id.* The court held a hearing on the Town's motion on February 23, 1990, at which no appearance was entered on Mr. Brown's behalf. *See id.* at 2. By order dated March 1, 1990, the court granted the Town's motion, finding that Mr. Brown had failed to obey the court's September 25, 1989, judgment. *See id.* Furthermore, upon finding that Mr. Brown's actions "[i]ndicate[d] a willful, intentional, and deliberate course of action, which it appears that [Mr. Brown] intends to continue, of refusing to recognize the jurisdiction of the Court and the obligation of [Mr. Brown] to obey the judgments and orders of the Court," the court found Mr. Brown guilty of contempt of court. *See id.* at 2–3. Accordingly, the court sentenced Mr. Brown to a term of six months in the Madison County jail or "until such time as [Mr. Brown] agrees to abide by the court order." *See id.* at 3.

On April 9, 1990, Mr. Brown signed an affidavit in which he agreed to abide by the court's judgment dated September 25, 1989. *See* Defendants' Exhibit N. Based upon this affidavit, the court ordered Mr. Brown released from jail. *See* Defendants' Exhibit O. Despite this affidavit, Mr. Brown continued to disregard the court's judgment. Therefore, the Town once again moved for an order punishing him for contempt of court. *See* Defendants' Exhibit S at 1. In addition, the Town moved for appointment of a receiver pursuant to Rule 5106 of New York Civil Practice Law and Rules. *See id.* On September 21, 1990, the court held a hearing on this motion, at which Mr. Brown did not

appear. The court granted the Town's motion finding Mr. Brown had failed to obey its September 25, 1989, judgment and had violated his sworn agreement with the court dated April 9, 1990. *See id.* at 2.

Holding that Mr. Brown was guilty of contempt of court, the court reinstated Mr. Brown's prior six month sentence and directed that he be returned to the Madison County jail for service of the balance of his term. *See id.* at 3. In addition, the court ordered that "Michael Larkin be and is hereby appointed receiver pursuant to CPLR 5106 of a quantity of automobiles, automobile parts, and miscellaneous junk to be found at an unlicensed and illegal automobile junkyard at premises presently occupied by [Mr. Brown] ..." *See id.* Finally, the court ordered that the receiver carry out its September 25, 1989, judgment according to certain instructions and directions of the court. *See id.* These instructions, among other things, directed Mr. Larkin to

> take possession of the offending automobiles, automobile parts, and miscellaneous junk located at the illegal junkyard ... obtain the services of such contractors and agents as may be necessary to remove such automobiles, automobile parts, and items of miscellaneous junk from the subject premises.... [and] sell all items at such prices as may fairly and reasonably be obtained upon the local market ...

*See* Defendants' Exhibit S at 4.

At some point during the course of the receivership, Mr. Brown moved the court for an order clarifying the term "miscellaneous junk." [5] *See* Defendants' Exhibit T. Mr. Brown argued that the receiver had removed property beyond the scope of the court's order in that he had removed farm equipment and tractor parts. *See id.* at 2. In response, the Town argued that at the time of the original order the property contained acres of junked automobiles making it impossible to itemize the property with any specificity. *See id.* at 2.

At the time that Mr. Brown moved for clarification of the court's order, the parties

conceded that the property had been substantially cleared. *See id.* Finding that the dispute centered primarily on which items of farm equipment were in use and which had been abandoned and, therefore, constituted junk, the court concluded that a specific inventory should be possible at that time. *See id.* Thus, the court directed the attorneys for both parties "[t]o agree on and submit to this court within 7 days of the date of this decision an inventory of the remaining junk to be disposed of." *See id.* at 3. If they could not agree, the court directed them to notify the court, whereupon an immediate evidentiary hearing would be directed. *See id.*

Apparently, the parties could not agree on an inventory because the court held an in-chambers conference on July 24, 1991. Based upon the parties' arguments as well as submitted photographs, the court directed that

> [Mr. Brown] shall have seven days from this date to place any vehicles or other articles under cover of barn or other structure. Any articles not placed in a barn within seven days of this date shall be deemed to be "miscellaneous junk" and shall be subject to removal by the Town of Fenner pursuant to the order of this court dated December 20, 1990.

*See* Defendants' Exhibit U at 3.

After all the items were disposed of, the receiver moved for a "settlement of receiver's account." *See* Defendants' Exhibit V. On May 14, 1993, the court ordered

> that the motion to confirm the referee's report be granted, and ... that the account of Michael Larkin, Receiver, duly filed herewith is hereby settled and approved, and ... that the Receiver is allowed for his commissions as Receiver in this action 5 percent of the total receipts $36,491.72 ... [and] that the Plaintiff, Town of Fenner, be paid the sum of $10,-061.34 as reimbursement for costs incurred in connection with bringing [Mr. Brown's] property in compliance with local laws,

5. He also moved for an order directing the receiver to cease and desist from draining automobile fluids onto his property. *See* Defendants' Exhibit T. That motion, however, has no relevance to the instant action.

pursuant to Order of the Madison County Supreme Court, entered December 20, 1990 [, and] ... that ... the Receiver pay the balance of the sums ... to [Mr. Brown].

*See* Defendants' Exhibit W at 2.

Upon Mr. Brown's subsequent refusal to accept payment from the receiver, the court ordered that the sum of $27,567.61 be paid into the court, after which Mr. Larkin was discharged from his duties as receiver. *See* Defendants' Exhibit X.

## DISCUSSION

### I. Summary Judgment Standard

Since 1986 the standards that govern a court's analysis of a summary judgment motion have been well-settled.[6] As a drastic remedy, summary judgment is only available when it is clear that no genuine issue of material fact exists which needs to be resolved at trial, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The mere existence of some alleged factual dispute, however, will not defeat such a motion. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510, 91 L.Ed.2d at 211. Rather, Rule 56 requires that there be no *genuine* issue of *material* fact. *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211 (emphasis in original).

The moving party bears the initial burden of informing the court of the basis of its motion and identifying those portions of "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of any genuine issue of material fact. *Id.* at 247, 106 S.Ct. at 2510, 91 L.Ed.2d at 211; *See also Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995). Once the moving party has met this burden, the burden then shifts to the non-movant to demonstrate that there is a genuine issue of material fact. In this regard, the non-movant must do more "[t]han simply show that there is some meta-

physical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, 89 L.Ed.2d at 552. "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor." *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F.Supp. 814, 819–20 (S.D.N.Y.1992) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (interpreting the "genuineness" requirement)).

Moreover, as a preliminary matter, the non-movant must "[m]ake a showing sufficient to establish the existence of [the] element[s] essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. If the non-movant fails to satisfy this initial burden, there can be no genuine issue as to any material fact because "[a] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. Under such circumstances, the moving party is entitled to judgment as a matter of law. *Id.*

In making its determination as to whether any genuine factual dispute exists, the court must resolve all ambiguities in favor of the non-movant. *See Cronin*, 46 F.3d at 202 (citation omitted). Moreover, the court must view the inferences to be drawn from the underlying admissions, affidavits, exhibits, interrogatory answers, and depositions in the light most favorable to the non-moving party. *See id.* (citations omitted). Finally, the court must keep in mind that its "[t]ask at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1224

---

6. In 1986, the Supreme Court decided a trilogy of cases in which it set forth these now familiar standards. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

(2d Cir.1994); *see also Cronin*, 46 F.3d at 203. It is with these guidelines in mind that the court must determine whether defendants are entitled to the relief they seek.

## II. Section 1983 [7]

### A. General Principles

■ Before addressing the merits of plaintiffs' four causes of action, the court will set forth the general principles which govern § 1983 actions. As the Second Circuit has stated "[s]ection 1983 provides an instrument by which an individual deprived of a federal right by a person acting under color of state law may be compensated." *Eagleston v. Guido*, 41 F.3d 865, 875 (2d Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981)). Moreover,

> [i]t is well established that in order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States.

*Id.* at 875–76 (quoting *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993)); *see also Johnson v. Harron*, No. 91–CV–1460, 1995 WL 319943, 1995 U.S.Dist. LEXIS 7328 (N.D.N.Y. May 23, 1995); *Robinson v. Town of Colonie*, 878 F.Supp. 387 (N.D.N.Y.1995) (McCurn, S.J.); *Flowers v. TJX Cos., Inc.*, No. 91–CV–1339, 1994 WL 382515, 1994 U.S.Dist. LEXIS 10453 (N.D.N.Y. July 15, 1994) (Munson, S.J.).

Finally, to hold an individual liable for a deprivation of a plaintiff's constitutional rights, the plaintiff must prove that the particular individual was personally involved in the alleged deprivation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). With these general principles in mind, the court will discuss each of plaintiffs' causes of action.

### B. Plaintiffs' Second Cause of Action [8]

■ Plaintiffs' second cause of action arises from the events surrounding Mr. Brown's indictment and conviction for violations of New York Vehicle and Traffic Law § 415–a and New York General Municipal Law § 136.3. Mr. Brown was indicted by a Madison County Grand Jury in December 1987 for unlicensed vehicle dismantling and unlicensed junkyard operation. *See Plaintiffs' Second Amended Complaint at 5.* A jury found Mr. Brown guilty of these offenses after a trial before Judge Kevin M. Dowd. *See Defendants' Exhibit A.* As a result of his conviction, on August 12, 1988, he was sentenced as follows:

> Unlicensed Vehicle Dismantling—3 yr. conditional discharge[.] Unlicensed Junkyard Operation—1 yr. conditional discharge[.] Fined $250 on each charge—due within 90 days; 30 days to comply with Town Regulations & obtain license; 30 days to supply DA & Town with detailed inventory of vehicles.

*See id.*

On January 9, 1989, Mr. Brown was resentenced as follows: "Unlicensed Vehicle Dismantling—Conditional discharge terminated; Sentenced to 6 months incarceration in Madison County Jail. Unlicensed Junkyard Operation—Conditional discharge terminated;

---

**7.** Section 1983 provides, in pertinent part, that

> Every person who, under color of statute, ordinance, regulation, custom, or usage, of any State ..., subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

**8.** Plaintiffs interposed no opposition to defendants' motion for summary judgment with respect to this cause of action. It is clear from the allegations in plaintiffs' complaint, however, that this cause of action is asserted only on behalf of Mr. Brown. Neither Mr. Pushlar or Mr. Markowicz were in any way involved with, or harmed by, Mr. Brown's indictment or conviction. Therefore, they would have no standing to assert a claim against defendants for alleged violations of Mr. Brown's constitutional rights.

Sentenced to 15 days incarceration concurrently." *See id.*

Plaintiffs contend that the indictment under which Mr. Brown was charged is void because it was based upon the perjured testimony of defendant David Shephard. *See* Plaintiffs' Second Amended Complaint at 9. Furthermore, they assert that either or both of the statutes under which he was convicted are void for vagueness as enacted and as applied. *See id.* at 9–10. Finally, they aver that because Mr. Brown's sentence and conviction were based upon violations of his constitutional rights, they are a nullity. *See id.* at 10.

Before it addresses the merits of this cause of action, the court must direct its attention to a procedural problem with the same. Although not raised as a basis for their present motion, defendants assert as an affirmative defense in their answer that the allegations in plaintiffs' complaint are barred by the applicable statute of limitations. *See* Defendants' Exhibit AA, Defendants' Answer, Seventh Affirmative Defense.

▇ "The applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within three years." *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1156 (2d Cir.1995) (citing *Owens v. Okure,* 488 U.S. 235, 250–51, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989); *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994)). Defendants filed the complaint in this action on February 1, 1993. Therefore, to be timely, plaintiffs' second cause of action must be based upon events which occurred on or after February 1, 1990.

In the present case, the events that form the gravamen of plaintiffs' second cause of action are clearly untimely. As stated above, plaintiffs allege that Mr. Brown's conviction and sentence should be vacated due to various constitutional problems with the laws under which he was charged, his indictment, and his conviction. Mr. Brown was indicted in 1987 and convicted by a jury in 1988. He did not appeal this conviction. Moreover,

Mr. Brown was sentenced on August 12, 1988, and resentenced on January 9, 1989. All of these events occurred more than three years before plaintiffs filed their complaint in the present action. Therefore, plaintiffs' second cause of action is untimely. Accordingly, the court grants defendants' motion for summary judgment with respect to plaintiffs' second cause of action on the grounds that it is barred by the applicable three year statute of limitations.

*C.   Plaintiffs' Fourth Cause of Action* [9]

▇ In their fourth cause of action, plaintiffs allege that Mr. Brown was forced to inhale cigarette smoke daily during his incarceration in violation of Public Health Law § 1399–n and that such exposure constitutes a denial of due process, trespass and battery. *See* Plaintiffs' Second Amended Complaint at 10. Furthermore, plaintiffs assert that such exposure constituted cruel and unusual punishment in violation of the Eighth Amendment. *See id.* at 11.

Plaintiffs cannot maintain this cause of action against these defendants for the very simple reason that these defendants were not personally involved in the alleged constitutional violation. There is nothing in the record to indicate that defendants personally exposed Mr. Brown to cigarette smoke. Moreover, even if the court were to assume that defendants were in some way responsible for Mr. Brown's incarceration, there is no evidence that defendants have any responsibility for maintaining the Madison County jail or for promulgating rules and regulations establishing minimum standards for the care, custody, correction or treatment of inmates.

Based upon this record, the court concludes that plaintiffs have failed to demonstrate an essential element of this cause of action—that these defendants were involved personally in the alleged constitutional violation which forms the basis of this claim. Accordingly, the court grants defendants' motion for summary judgment with respect to plaintiffs' fourth cause of action.

9. Plaintiffs interposed no opposition to defendants' motion for summary judgment with respect to this cause of action. As with their second cause of action, they assert this one only on behalf of Mr. Brown.

#### D. Plaintiffs' First and Third Causes of Action

Plaintiffs' first and third causes of action concern the removal and sale of certain items situated on Mr. Brown's property by defendant Michael Larkin. The New York State Supreme Court for Madison County appointed Mr. Larkin as a receiver to carry out a judgment entered against Mr. Brown in a civil action brought by the Town. In their first cause of action, plaintiffs allege that "[t]he confiscation of a 40-year collection of vehicles and other items by the Defendants is an unreasonable seizure of Plaintiffs' property without just compensation, in violation of the Fourth and Fifth Amendments, U.S. Constitution, and violates Article I Section 7(a) and 12 of the New York State Constitution." See Plaintiffs' Second Amended Complaint at 8. In their third cause of action, plaintiffs further allege that they

> [w]ere denied due process of law and suffered unreasonable seizure of property and private property taken for public use without just compensation, when valuable items were taken and again when Defendants secured an order for said items to be sold on the LOCAL market ... [in violation of] the Fourth, Fifth, Eighth and Fourteenth Amendments.

See id. at 10.

In response to these allegations, defendants assert, first of all, that Mr. Larkin is shielded from suit by the doctrine of absolute quasi-judicial immunity. See Defendants' Memorandum of Law at 2–5. Secondly, they argue that defendants Costello, Keator, and Shephard are not subject to liability for the receiver's actions. See id. at 5–6. Finally, they contend that to the extent that plaintiffs' claims are based upon a theory that they are liable to him because they instituted a civil enforcement action against him, Mr. Costello, Mr. Keator, and Mr. Shephard are shielded from suit by the doctrine of absolute legislative immunity. See id. at 6–8. In opposition to these arguments, plaintiffs focus exclusively upon Mr. Larkin's actions in his capacity as a court-appointed receiver. See, generally, Plaintiffs' Memorandum of Law.

#### 1. Liability of the Town of Fenner

■ It is unclear from plaintiffs' second amended complaint what the basis of their claim against the Town is. To the extent that plaintiffs seek to impose liability upon the Town for the alleged unconstitutional acts of its employees Costello, Shephard and Keator, their claim must fail. In Monell v. Department of Social Svcs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court expressly rejected municipal liability based upon respondeat superior. In this regard, the Court held that "[a] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691, 98 S.Ct. at 2036, 56 L.Ed.2d at 636 (emphasis in original).

■ As a result of Monell, plaintiffs who seek to impose liability upon a municipality under § 1983 must prove that "[t]he constitutional harm suffered was the result of a municipal policy or custom." Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir.1992) (citing Monell, 436 U.S. at 690–91, 98 S.Ct. at 2035–36; Pembaur, 475 U.S. at 478–79, 106 S.Ct. at 1297–98; Ricciuti v. New York City Transit Auth., 941 F.2d 119, 122 (2d Cir.1991); Fiacco v. City of Rensselaer, 783 F.2d 319, 326 (2d Cir. 1986)).[10] To establish a municipal policy or custom, "[t]he plaintiff must allege a specific pattern or series of incidents that support the general allegation of a custom or policy; alleging one specific incident in which the plaintiff suffered a deprivation will not suffice." Henry v. Farmer City State Bank, 808 F.2d 1228, 1237 (7th Cir.1986) (citations omitted).

■ Reading plaintiffs' complaint very broadly, the only possible basis for a claim that the Town had a policy which deprived

---

10. There is a second theory, often referred to as the failure-to-train theory, pursuant to which a municipality may be held liable for a plaintiff's constitutional deprivation. Nothing in plaintiffs' complaint or in their papers submitted in opposition to the present motion, however, would support reliance upon such a theory.

any of the plaintiffs of their constitutional rights is the Town Board's decision to commence a civil enforcement action against Mr. Brown. To the extent that this is plaintiffs' intention, it is equally obvious that such a claim could only be asserted on behalf of Mr. Brown, as he was the only one of the plaintiffs who was involved in that state court proceeding.

The problem with such a claim, however, is that it is barred by the doctrine of res judicata. Pursuant to *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984), a federal court must give the same preclusive effect to a state court decision as a state would give it. Therefore, in this case, the court must look to New York law. Under New York law, "[p]arties are precluded from raising in a subsequent proceeding any claim they could have raised in the prior one, where all of the claims arise from the same underlying transaction." *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir.1994) (citing *Reilly v. Reid*, 45 N.Y.2d 24, 29, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978)). This is true even if the other claims are " '[b]ased upon different legal theories or if seeking a different remedy.' " *Silverman v. Leucadia, Inc.*, 156 A.D.2d 442, 443–44, 548 N.Y.S.2d 720, 721 (2d Dep't 1989) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981)) (other citations omitted). Moreover, under New York law, for res judicata purposes, a default judgment is conclusive. *Id.* 548 N.Y.S.2d at 721 (citations omitted).

In the present case, there can be no dispute that the claims in the present suit arise from the same underlying transaction as those in the prior state court action. In that action, the Town of Fenner sought to have the court permanently enjoin Mr. Brown from operating an illegal junkyard. As a result of the default judgment entered therein, the court appointed a receiver to dispose of the automobiles, automobile parts, and miscellaneous junk which were situated in that junkyard. In the present action, plaintiffs contend that Mr. Brown was not operating a junkyard and that the vehicles and vehicle parts on his property were part of a

valuable collection. Furthermore, they allege that the Town's decision to commence an action against him over these items was harassment.

Mr. Brown never appealed any orders of the court in the prior state court action nor did he move the court to remove the default judgment once it had been entered against him. Moreover, when the receiver moved to settle his account, Mr. Brown did not challenge the accounting in the state court. Instead, as he admits, he commenced the present action. Mr. Brown had the opportunity to challenge the Town's actions in the prior state court proceeding. Moreover, he could have raised any of the claims he now raises, including his federal and state constitutional claims, but he chose not do so. Having made this choice, he is bound by it and is, therefore, barred from relitigating these claims by the doctrine of res judicata. Accordingly, the court grants defendants' motion for summary judgment with respect to the Town as barred by res judicata.

### 2. Liability of Michael Larkin

Judges are absolutely immune from civil liability for acts performed in their judicial capacity, provided such acts are not done in the " 'clear absence of all jurisdiction.' " *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872)). Likewise, "[n]onjudicial officials are encompassed by a judge's absolute immunity when their official duties 'have an integral relationship with the judicial process.' " *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir.1980). Like judges, these officials must be acting within the scope of their authority." *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir.1994) (citation omitted). Absolute immunity will not attach to such individuals **only** when they perform acts which are "[c]learly outside the scope of their jurisdiction." *Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir.1989) (citation omitted). Moreover, "[a]llegations of malice, or bad faith or, [even], a claim of conspiracy will not defeat the protection of derivative absolute immunity for actions taken pursuant to court orders." *Id.* (citing *Dorman v. Hig-*

gins, 821 F.2d 133, 139 (2d Cir.1987); *Moses v. Parwatikar*, 813 F.2d 891, 892–93 (8th Cir.1987); *Demoran v. Witt*, 781 F.2d 155, 158 (9th Cir.1985)). The policy behind affording absolute quasi-judicial immunity to such officials is to ensure that those who are assigned to carry out a judge's orders "[c]an perform their function without the need to secure permanent legal counsel. A lesser degree of immunity could impair the judicial process." *Valdez v. City and County of Denver*, 878 F.2d 1285, 1288 (10th Cir.1989).

Courts that have addressed this issue have found that such an "integral relationship" encompasses the activities of guardians ad litem, conservators, probation officers, and court appointed receivers. *See Cok v. Cosentino*, 876 F.2d 1 (1st Cir.1989) (conservator, guardian ad litem); *Dorman v. Higgins*, 821 F.2d 133 (2d Cir.1987) (probation officers); *Kermit Construction v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1 (1st Cir.1976) (court appointed receiver). As the First Circuit explained in *Kermit Construction*, to deny a receiver the immunity of his appointing judge

[w]ould make the receiver a lightning rod for harassing litigation aimed at judicial orders. In addition to the unfairness of sparing the judge who gives an order while punishing the receiver who obeys it, a fear of bringing down litigation on the receiver might color a court's judgment in some cases; and if the court ignores the danger of harassing suits, tensions between receiver and judge seem inevitable.

*Kermit Construction*, 547 F.2d at 3.

Plaintiffs do not dispute the fact that court-appointed receivers, such as Mr. Larkin, enjoy judicial immunity for acts within the scope of their authority. Their assertion, however, is that Mr. Larkin "[r]elinquished his judicial immunity by his conduct not prescribed by the court's order, since the said order did not specify removal of valuable automobiles, trucks, seasonal-use farm equipment, or valuable miscellany, yet such valuable things were carted off." *See* Plaintiff's Memorandum of Law at 2. Specifically, in their complaint, plaintiffs allege that

[u]pon information and belief, State Supreme Court Judge Albert E. Tait, Jr's

December 20, 1990 Amended Order was for Defendant Receiver Larkin to sell "junk automobiles, automobile parts and miscellaneous junk" at such prices as may FAIRLY and reasonably be obtained UPON THE LOCAL MARKET, yet no local market was explored by the Defendants for the COLLECTION items other than as SCRAP and no public auction was announced or held.

*See* Plaintiffs' Second Amended Complaint at 6–7.

Moreover, plaintiffs assert that

[u]pon information and belief, NO ORDER WAS GIVEN by Judge Dowd, August 12, 1988 or Judge Tait, September 25, 1989 or subsequently, to take FARM tractors or other FARM equipment and supplies; or VALUABLE ANTIQUE vehicles, VALUABLE RESTORABLE ones or vehicles whose increasingly valuable parts, for the restoration of other vehicles, were being held by plaintiffs as investments; or vehicles serving as STORAGE SHEDS.

Yet all were taken by Defendants.

*See id.* at 7.

To support their contention that the above-cited acts were outside the scope of Mr. Larkin's authority as receiver, plaintiffs claim that unspecified witnesses will attest that many of the vehicles taken were not offensive, were of value in various ways, and should not have been considered or taken as junk. *See* Plaintiffs' Memorandum of Law at 3. Moreover, plaintiffs assert that unnamed witnesses would testify that local people would have purchased some of the items at higher than scrap metal prices if they had been given notice and opportunity. *See id.*

The order pursuant to which Mr. Larkin was appointed as receiver was the end result of a civil enforcement action filed by the Town against Mr. Brown. In that order, among other things, the court instructed Mr. Larkin to take possession of the offending automobiles, automobile parts and miscellaneous junk located at the illegal junkyard which Mr. Brown maintained, to remove these items, and to sell them at such prices as may fairly and reasonably be obtained

upon the local market. *See* Defendants' Exhibit S.

Mr. Larkin undertook to perform his duties by contracting with companies specializing in the removal and salvaging of materials for scrap. *See* Larkin Affidavit at ¶ 10. He made this decision after inspecting the items to be removed and concluding that the vast majority of them were of value only as scrap material. *See id.* at ¶ 9. At some point during the receivership, Mr. Brown sought an order from the court clarifying the term "miscellaneous junk." At that time, the court instructed the Town and Mr. Brown to agree to an inventory of the remaining items or to report to the court if they could not so agree. Failing to agree, the court held an in-chambers conference after which it ordered that Mr. Brown place any vehicles or other articles under cover within seven days. After that time, anything that was not so covered would be considered "miscellaneous junk" subject to removal. Following the complete removal of the items, Mr. Larkin submitted a motion and accounting to the court. The account was settled by order of the court dated May 14, 1993. *See* Defendants' Exhibit W. Thereafter, approximately $27,567.61 of the gross receipts in connection with the disposal of these items was deposited with the court pursuant to court order because Mr. Brown refused to accept the money. *See* Defendants' Exhibit X.

The court has reviewed carefully the allegations contained in plaintiffs' complaint as well as their assertions in opposition to defendants' motion. Even after drawing all reasonable inferences in favor of plaintiffs, however, the court is left with the inescapable conclusion that plaintiffs have failed to demonstrate that Mr. Larkin's actions were taken in clear and complete absence of his authority. Rather, the court is convinced that the gist of plaintiffs' claims is dissatisfaction with the manner in which Mr. Larkin performed his appointed duties. Such allegations are insufficient, as a matter of law, to overcome Mr. Larkin's absolute immunity to civil liability. *See Cok,* 876 F.2d at 3–4. Accordingly, the court grants defendants' motion for summary judgment with respect to plaintiffs' first and third causes of action

to the extent that they apply to Mr. Larkin on the grounds that he is protected from suit by the doctrine of absolute quasi-judicial immunity.

### 3. Liability of Lynn Keator

■ Mr. Keator was, at all times relevant to this action, the Zoning Officer of the Town of Fenner. Although his name appears in the caption of the complaint, plaintiffs have alleged no wrong-doing on his part. Nor in opposition to defendants' motion do plaintiffs assert any facts which could form the basis of a claim against Mr. Keator. Accordingly, the court grants defendants' motion for summary judgment with respect to Mr. Keator.

### 4. Liability of David Shephard

Mr. Shephard, during the relevant time period, was the Clerk of the Town of Fenner. The only allegation in plaintiffs' complaint which refers to Mr. Shephard is plaintiffs' assertion that "[t]he indictment [against Mr. Brown] was obtained through the perjured testimony of Defendant David Shephard, town clerk." *See* Plaintiffs' Second Amended Complaint at 5. It is clear that this allegation pertains only to plaintiffs' second cause of action. As the court already has explained, plaintiffs' second cause of action is barred by the applicable statute of limitations for § 1983 claims. Thus, any claim against Mr. Shephard which pertains to this cause of action is also time-barred. There being no other allegation against Mr. Shephard in plaintiffs' complaint nor any facts in the record which would support any other claims against him, plaintiffs may not maintain this action against Mr. Shephard. Accordingly, the court grants defendants' motion for summary judgment with respect to Mr. Shephard.

### 5. Liability of Francis Costello

■ In their complaint, plaintiffs allege that "[u]pon information and belief, more than 1500 vehicles and other items, which Defendants had found offensive, were removed from Plaintiff Brown's and his father's property by Defendant Receiver Larkin on orders from Defendant Frank Costello and the other Defendants, while Plaintiffs and

their agents could not interfere." *See* Plaintiffs' Second Amended Complaint at 6. In addition, plaintiffs assert that "[i]t is Plaintiffs' further information and belief that Defendant Town Supervisor Frank Costello and his accomplices have enriched themselves at Plaintiffs' expense." *See id.*

The court will assume for the moment that these allegations are sufficient to state a claim that Mr. Costello, in some manner, violated plaintiffs' constitutional rights. In order to withstand defendants' motion for summary judgment, however, plaintiffs cannot rely upon these allegations alone. They must come forward with some affirmative proof to demonstrate that at the very least a genuine issue of material fact exists with respect to whether Mr. Costello's acts violated plaintiffs' constitutional rights. This plaintiffs have failed to do. The only statement they make in opposition to defendants' summary judgment motion which even remotely pertains to these allegations is that Mr. Costello was seen at Mr. Brown's property during the time the items were being disposed of by Mr. Larkin in his capacity as receiver. *See* Plaintiffs' Statement of Facts in Dispute at ¶ 1B. This conclusory allegation is insufficient to sustain a claim that Mr. Costello was giving orders to Mr. Larkin as to the disposal of the property in question.

Secondly, there is absolutely nothing in the record to support plaintiffs' conclusory allegations that Mr. Costello, or any of the other defendants, profited at plaintiffs' expense. Therefore, the court is left with the inescapable conclusion that plaintiffs have not presented even a scintilla of evidence to support their allegations against Mr. Costello. Accordingly, the court grants defendants' motion for summary judgment with respect to Mr. Costello.

### III. State Law Claims

A court may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if it "[h]as dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. In the present case, the court has dismissed all of plaintiffs' federal claims. Therefore, to the extent that its resolution of these claims has not disposed of plaintiffs' state law claims as well, the court declines to exercise its supplemental jurisdiction over the same.

### CONCLUSION

For the reasons stated above, the court grants defendants' motion for summary judgment with respect to plaintiffs' second cause of action as barred by the applicable three year statute of limitations for § 1983 causes of action. In addition, the court grants defendants' motion for summary judgment with respect to plaintiffs' fourth cause of action because these defendants were, in no way, personally involved in subjecting Mr. Brown to cigarette smoke while he was incarcerated.

Moreover, the court grants defendants' motion for summary judgment with respect to plaintiffs' first and third causes of action. With respect to the Town of Fenner, these claims are barred by the doctrine of res judicata. With respect to defendant Larkin, these claims are barred by the doctrine of absolute quasi-judicial immunity. With respect to defendant Keator, plaintiffs have failed to allege any wrong doing on his part. With respect to defendant Shephard, the only allegations against him concern plaintiffs' second cause of action which is time-barred. With respect to defendant Costello, plaintiffs have failed to demonstrate that any of his actions violated plaintiffs' constitutional rights.

Finally, the court declines to exercise its supplemental jurisdiction over plaintiffs' state law claims.

Based upon these conclusions, the court grants defendants' motion for summary judgment in its entirety and directs the clerk of the court to enter judgment in favor of defendants and against plaintiff.

IT IS SO ORDERED.