Anise JENKINS, et al., Appellants,

v.

**WASHINGTON CONVENTION CENTER and District of Columbia, Appellees.**

No. 99–7196.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 8, 2000.

Decided Jan. 16, 2001.

Daniel M. Schember argued the cause for appellants. With him on the briefs was Alisa A. Wilkins.

Lutz Alexander Prager, Assistant Deputy Corporation Counsel, argued the cause for appellee District of Columbia. With him on the brief were Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel.

Glenn M. Young argued the cause for appellee Washington Convention Center. With him on the brief were Mark D. Poindexter and Frederick A. Douglas.

Before: WILLIAMS, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Appellants, who are 19 individuals and one corporation,[1] seek refunds of special District of Columbia taxes enacted by the Council of the District of Columbia ("D.C. Council") to finance a new convention center. They alleged in their complaint that the Mayor exceeded his authority under the District of Columbia Self–Government and Governmental Reorganization Act[2] by collecting the special taxes under an expired statute, and that, notwithstanding later ratifications of the taxes by the D.C. Council, they were deprived of property without procedural due process and just compensation. They also alleged tortious conversion of their money. The district court dismissed the complaint for lack of subject matter jurisdiction. On appeal, appellants contend that the district court erred in holding that the District of Columbia is a "State" for purposes of the Federal Tax Injunction Act, 28 U.S.C. § 1341 (1994) ("FTIA"), that the FTIA barred their claims under 42 U.S.C. § 1983 (Supp. III 1997), and that their claims may only be presented in the Superior Court of the District of Columbia after exhaustion of administrative remedies.

We need not decide whether the FTIA applies to the District of Columbia, nor whether the FTIA bars appellants' claim for monetary damages under § 1983. Because Congress has granted exclusive jurisdiction over challenges to District of Columbia tax assessments to the District of Columbia courts, see D.C.Code §§ 11–921(a)(3)(B), 11–1201, 11–1202 (1981), we

---

1. The individual appellants are Anise Jenkins, Philip Barlow, Matthew D. Bernstein, Steven L. Block, Christopher Crowder, Steven Donkin, Kathryn Eckles, Jennifer Ellingston, Deborah Hanrahan, Harriet Hubbard, Eugene Dewitt Kinlow, Kevin M. McCarron, Joseph Passonneau, Gastrel L. Riley, Sandra Seegars, Thomas C. Smith, Bradford Snell, Elizabeth Solomon, and Karen A. Szulgit. The corporate appellant is Planet Vox, Inc.

2. Pub.L. No. 93–198, 87 Stat. 774 (December 24, 1973) (codified at D.C.Code § 1–201 et seq. (1981)) ("Self–Government Act"); see also D.C.Code § 1–242 (1981).

affirm the dismissal of the complaint for lack of subject matter jurisdiction.[3]

## I.

The Washington Convention Center Authority Act of 1994, D.C. Law 10–188 (codified as amended at D.C.Code § 9–801 *et seq.*) ("1994 Act"), increased certain D.C. income and franchise taxes and certain D.C. sales and use taxes on meals, beverages, auto rentals, and hotels. *See* 1994 Act §§ 301–303. The special taxes were dedicated to the construction of a new convention center in the District of Columbia, *see id.* §§ 201(4), 208, and the Act required the Authority Board to submit to the Mayor and D.C. Council, within 24 months, a report including a financial statement and feasibility analysis for the center's construction. *See id.* § 206(h). The 1994 Act also included a sunset provision, providing that the special taxes would expire after two years if the Authority Board failed to submit the report within 24 months, or by September 28, 1996. *See id.* § 306(a).

Weeks prior to the deadline for submission of the report, the D.C. Council concluded that it would be necessary to extend the submission deadline, and thus extend the statute imposing the special taxes. On October 1, 1996, the D.C. Council passed an emergency act, effective September 28, 1996, extending the submission deadline to 30 months instead of 24 months.[4] On December 3, 1996, the D.C. Council passed a second emergency act, extending the submission date to 29 months instead of 24 months, until February 28, 1997.[5] On January 8, 1997, the D.C. Council also passed a temporary act, effective after Congressional review on April 25, 1997, extending the submission deadline to February 28, 1997.[6] Then, in June 1998, the D.C. Council passed permanent legislation to repeal, as of February 27, 1997, the submission deadline in the temporary act.[7] The D.C. Council Report of the Committee on Finance and Revenue stated that "a repeal of the [sunset] provision would remove any concerns that the continued collection of the taxes is contingent upon factual determinations and conditions precedent." *Report of D.C. Committee on Finance and Revenue,* dated June 1, 1998, at 9. Finally, in December 1998, the D.C. Council passed permanent legislation that stated "[n]otwithstanding any other law, surtaxes and dedicated taxes shall be collected by the Mayor," for the convention center, until the tax provisions "are repealed by legislation enacted after September 27, 1996."[8] This legislation, effective after congressional review on April 20, 1999, states that it applies as of September 27, 1996.

3. The court may affirm the district court on grounds different from those relied upon by the district court. *See, e.g., United States ex rel. Settlemire v. District of Columbia,* 198 F.3d 913, 920 (D.C.Cir.1999); *see also Securities and Exchange Commission v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (citing *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937)).

4. *See* Washington Convention Center Authority Act of 1994 Emergency Amendment Act of 1996, D.C. Act 11–393, effective October 1, 1996, §§ 2, 4. This Act was effective for ninety days. *See* D.C.Code § 1–229(a) (1981).

5. *See* Washington Convention Center Authority Act of 1994 Time Extension Emergency Amendment Act of 1996, D.C. Act 11–509,

effective January 8, 1997, §§ 2, 4. This Act was effective for ninety days. *See* D.C.Code § 1–229(a) (1981).

6. *See* Washington Convention Center Authority Act of 1994 Time Extension Temporary Amendment Act of 1997, D.C. Law 11–262, effective April 25, 1997, § 2. By its terms, the temporary act expired after 225 days, on December 6, 1997. *Id.* § 4(b).

7. *See* Washington Convention Center Authority Financing Amendment Act of 1998, D.C. Law 12–142, effective August 12, 1998, § 2(*l*) ("1998 Act").

8. *See* Technical Amendments Act of 1998, D.C. Law 12–264, effective September 27, 1996, § 21 (codified at D.C.Code § 9–833) ("1999 Act").

The 1999 Act would appear to foreclose any argument that the D.C. Council did not retroactively authorize the special taxes.[9] *See generally United States v. Heinszen,* 206 U.S. 370, 27 S.Ct. 742, 51 L.Ed. 1098 (1907); *Thomas v. Network Solutions, Inc.,* 176 F.3d 500, 506 (D.C.Cir. 1999). According to appellants' complaint, however, the special tax laws expired "during all or portions of the period from September 28, 1996 until August 12, 1998," yet the Mayor continued to collect, and appellants continued to pay, the special taxes in an amount of not less than $467.06.[10] It is this amount, and similar amounts on behalf of the class of similarly situated taxpayers, for which appellants seek refunds. The Mayor's collection of the special taxes after the statute had expired is the basis for appellants' allegation that the Mayor acted *ultra vires,* beyond his authority under the Self–Government Act. Appellants maintain that the temporary act and the 1998 Act should not be interpreted to have retroactive application, and that to the extent the 1999 Act is intended to have blanket retroactive effect, it is an unconstitutional taking of property without just compensation if administrative remedies cannot reasonably be pursued. Appellants further allege that because taxation is planned and systematic, not random, any reliance by the District of Columbia on post-collection ratification, rather than prior legislative action, violates the due process clause, citing *Zinermon v. Burch,* 494 U.S. 113, 127–30, 135–39, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). In addition, appellants allege the

tortious conversion of their money. They filed their complaint in the United States District Court for the District of Columbia, asserting that the district court had jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), (4), and 1367.

In granting the motion of the Washington Convention Center Authority and the District of Columbia to dismiss the complaint, the district court ruled that the District of Columbia was a "State" for purposes of the FTIA, 28 U.S.C. § 1341 (1994), and hence the FTIA barred appellants' constitutional claims under § 1983 because appellants had an adequate remedy under District of Columbia law that they had not exhausted.[11] Because appellants did not seek a declaratory judgment or an order enjoining continued collection of the taxes, the district court ruled that it could not exercise jurisdiction under the "multiplicity of suits" rationale. Regarding appellants' statutory and tort claims under District of Columbia law, the district court ruled that, in view of its lack of subject matter jurisdiction over appellants' § 1983 claims, it was precluded from exercising supplemental jurisdiction.

## II.

On appeal, appellants contend that the district court erred as a matter of law in holding that the District of Columbia is a "State" under the FTIA and in dismissing their claims under § 1983 pursuant to the FTIA. Appellants also contend that they

---

**9.** *See id.*

**10.** Appellants allege in their complaint that the taxes expired on February 28, 1997, because financial submission requirements were not met by the date specified in the temporary act. Alternatively, appellants allege that the taxes expired on December 6, 1997, due to the expiration of the temporary act on that date. Appellants also allege that because the first emergency act expired on December 30, 1996, and the second emergency act did not become effective until January 8, 1997, taxing authority expired from December 30, 1996 to January 8, 1997. Appellants also allege that the taxes expired from December 30, 1996 to

April 25, 1997, because the second emergency act was invalid. Additionally, appellants allege that the taxes expired from September 28, 1996 to April 25, 1997, because the first emergency act was invalid.

**11.** *The Federal Tax Injunction Act provides that:*

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy, and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341 (1994).

were not required to exhaust their remedies under District of Columbia law, and, alternatively, if exhaustion is required, the administrative remedies were inadequate and exhaustion of them would be futile. In this regard, appellants maintain that because the money was taken from members of the class in countless daily transactions, each involving small amounts of money, it would be unreasonable to require them to keep records of each transaction in order to obtain relief under administrative tax refund remedies, *see* D.C.Code §§ 47–1812.11(a)(2), 47–2020 (1981), and that because the District of Columbia's position throughout this lawsuit has been adverse to their claims in every important respect, pursuing administrative remedies under District of Columbia law would be futile.

■ In contending that the district court had subject matter jurisdiction of their complaint, appellants rely on *D.C. Transit System, Inc. v. Pearson*, 250 F.2d 765 (D.C.Cir.1957). They read that case to stand for the proposition that where anticipatory relief is not sought (and appellants do not seek to enjoin current or future assessment or collection of the special taxes) a suit in district court is not barred by the D.C. Tax Injunction Act, D.C.Code § 47–3307 (1981).[12] In *Pearson*, the court held that in view of adequate remedies under District of Columbia law, a suit to enjoin collection of a District of Columbia tax would not lie in the district court. 250 F.2d at 765. Our review of appellants' jurisdictional contention is *de novo. See Zappia Middle East Construction Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 249 (2nd Cir.2000); *Trauma Service Group v. United States*, 104 F.3d 1321, 1324 (Fed.Cir.1997). Because Congress has vested exclusive jurisdiction in the District of Columbia courts over all challenges to assessments and claims for refunds of District of Columbia taxes, we hold that

the district court lacked jurisdiction of appellants' complaint, and we do not reach appellants' contentions regarding the FTIA and the D.C. Tax Injunction Act.

**A.**

For many years the courts of the District of Columbia were courts of limited jurisdiction and a variety of matters arising under District of Columbia law were litigated in the federal courts of the District of Columbia. Congress changed that in the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. 91–358, 84 Stat. 473, (July 29, 1970) (codified at D.C.Code § 11–101 *et seq.* (1981)) ("Court Reform Act"). Acting pursuant to Article I, Section 8, Clause 17 of the United States Constitution, Congress established a state-type court system for the District of Columbia and transferred jurisdiction over matters arising under District of Columbia law from the federal courts to the new District of Columbia courts. *See* Court Reform Act, Title I, § 111 (codified at D.C.Code §§ 11–921 through 11–923 (1981)); *see also Palmore v. United States*, 411 U.S. 389, 392 n. 2, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973); *cf. Sullivan v. Murphy*, 478 F.2d 938, 962 n. 35 (D.C.Cir.1973). As a result, the District of Columbia courts ceased to be courts of limited jurisdiction, and the federal courts in the District of Columbia assumed the traditional role of the federal courts in our judicial system. *See Andrade v. Jackson*, 401 A.2d 990, 992 (D.C.1979); *Reichman v. Franklin Simon Corp.*, 392 A.2d 9, 12 (D.C.1978).

Section 111 of the Court Reform Act provided that the newly established Superior Court of the District of Columbia would have jurisdiction of "any civil action or other matter, at law or in equity, which involves an appeal from or petition for review of any assessment of tax (or civil penalty thereon) made by the District of

---

**12.** The D.C. Tax Injunction Act provides that "[n]o suit shall be filed to enjoin the assessment or collection by the District of Columbia

or any of its officers, agents, or employees of any tax." D.C.Code § 47–3307 (1981).

Columbia." Court Reform Act, Title I, § 111 (codified as D.C.Code § 11–921(a)(3)(B) (1981)). Further, § 111 provided that "[t]he Tax Division of the Superior Court shall be assigned exclusive jurisdiction of all appeals from and petitions for review of assessments of tax (and civil penalties thereon) made by the District of Columbia and all proceedings brought by ,the District of Columbia for the imposition of criminal penalties pursuant to the provisions of the statutes relating to taxes levied by or in behalf of the District of Columbia." *Id.* (codified as D.C.Code § 11–1201 (1981)). Section 111 also provided:

> Notwithstanding any other provision of law, the jurisdiction of the Tax Division of the Superior Court to review the validity and amount of all assessments of tax made by the District of Columbia is exclusive. Effective on and after the effective date of the [Court Reform Act], any common-law remedy with respect to assessments of tax in the District of Columbia and any equitable action to enjoin such assessments available in a court other than the former District of Columbia Tax Court is abolished. Actions properly filed before the effective date of that Act are not affected by this section and the court in which any such action has been filed may retain jurisdiction until its disposition.

*Id.* (codified as D.C.Code § 11–1202 (1981)).

Congress' intent in the Court Reform Act could not be more clear: Congress unambiguously intended to vest in the District of Columbia courts exclusive jurisdiction over all challenges to District of Columbia taxes including those involving federal statutory or constitutional claims in lieu of (rather than concurrently with) jurisdiction in the federal courts. Lest

there be any doubt about Congress' intent to place exclusive jurisdiction in the newly established District of Columbia courts, in the Court Reform Act Congress expressly repealed its earlier enactment vesting concurrent jurisdiction over matters relating to District of Columbia taxes in the United States District Court for the District of Columbia.

Prior to the Court Reform Act, the district court for the District of Columbia was vested with "a two-fold jurisdiction," *King v. Wall & Beaver Street Corp.*, 145 F.2d 377, 380 (D.C.Cir.1944), as "both a federal district court and the local trial court of general jurisdiction." *Fehlhaber Pile Co. v. Tennessee Valley Authority*, 155 F.2d 864, 865 (D.C.Cir.1946); *see also Western Urn Mfg. Co. v. American Pipe and Steel Corp.*, 284 F.2d 279, 281 (D.C.Cir.1960); D.C.Code §§ 11–301, 11–305,11–306 (1940). In 1952, Congress enacted legislation with a "savings clause," S.Rep. No. 82–1471, at 3 (1952); H.R.Rep. No. 82–1977, at 4 (1952), preserving the availability of judicial remedies in the federal court for those District of Columbia taxpayers who elected not to pursue an administrative refund process that was available under District of Columbia law. *See* Act of July 10, 1952, ch. 649, 66 Stat. 543, 546 (codified at D.C.Code § 47–2413(c) (1961)).[13] Because the district court for the District of Columbia at the time was the local trial court of general jurisdiction, the 1952 statute had the effect of vesting concurrent jurisdiction in the district court over actions seeking refunds of District of Columbia taxes, along with the administrative jurisdiction of the District of Columbia Board of Tax Appeals. *See, e.g., Pearson*, 250 F.2d at 765. Section 111 of Title I of the Court Reform Act repealed the 1952 statute. *See* D.C.Code § 11–1202 (1981) (repealing

---

**13.** The 1952 Act provided, in relevant part:

> The remedies provided to the taxpayer under this chapter shall not be deemed to take away from the taxpayer any remedy which he might have under any other provision of law, but no suit for the recovery of overpayment of any tax shall be instituted in any

court if the taxpayer has elected to file an appeal with respect to such overpayment with the Board of Tax Appeals for the District of Columbia under this title.
Act of July 10, 1952, ch. 649, 66 Stat. 543, 546 (codified at D.C.Code § 47–2413(c) (1961)).

D.C.Code § 47–2413(c) (1961)). Consequently, appellants' reliance on *Pearson*, 250 F.2d at 765, for the proposition that the district court had jurisdiction, is misplaced.

Congress also made clear that its grant of exclusive jurisdiction over challenges to tax assessments under District of Columbia law included claims for refunds. Section 161 of the Court Reform Act established an administrative procedure for obtaining refunds of District of Columbia taxes, *see* Court Reform Act, Title I, § 161(a)(7) (codified as amended at D.C.Code § 47–3310 (1981)), and provided an appeal from an administrative determination with *de novo* review in the D.C. Superior Court, *see id.* § 161(a)(3) (codified as amended at D.C.Code § 47–3303 (1981)), a right of appeal to the District of Columbia Court of Appeals, *see id.* § 161(a)(4) (codified as amended at D.C.Code § 47–3304 (1981)), and certiorari review by the United States Supreme Court. *See id.*; *see also* D.C.Code § 11–102 (1981).

Having established a state-type court system for the District of Columbia, three years later Congress enacted the District of Columbia Self–Government and Governmental Reorganization Act, Pub.L. No. 93–198, 87 Stat. 774 (December 24, 1973) (codified at D.C.Code § 1–201 *et seq.* (1981)) ("Self–Government Act"). In addition to transferring certain functions previously performed by federal agencies to the District of Columbia government, Congress delegated some of its legislative authority under Article I, Section 8, Clause 17 of the United States Constitution to a new District of Columbia government. Title IV of the Self–Government Act was a Charter, which set forth the three branches of the District of Columbia government and is similar, in some measure, to a state constitution. *See Shook v. D.C. Fin. Responsibility and Mgmt. Assistance Auth.*, 132 F.3d 775, 776 (D.C.Cir.1998). Therein Congress delegated to the D.C. Council certain legislative powers, including revenue raising powers, *see* D.C.Code §§ 1–227, 1–233 (1981), by means of legislation in the form of either permanent, temporary, or emergency acts, as appropriate. *See id.* §§ 1–229, 1–233 (1981); *see also United States v. Alston*, 580 A.2d 587, 590–91 (D.C.1990). The Mayor, in turn, was charged with the responsibility to enforce the laws, including the levying and collection of taxes. *See* D.C.Code §§ 47–301, 47–310(6) (1981). Pursuant to their delegated authority, the D.C. Council enacted the 1994, 1998, and 1999 Acts, and the emergency and temporary acts, and the Mayor collected the special taxes for which appellants seek refunds.

■ By enactment of the Court Reform Act and the Self–Government Act, therefore, Congress has expressed its clear intent to grant exclusive jurisdiction over claims for refunds of District of Columbia taxes to the District of Columbia courts and authorized District of Columbia government officials to enact and collect, as well as refund, taxes. Congress divested the federal courts of any jurisdiction over such challenges that they might otherwise have, including jurisdiction over challenges presenting federal statutory or constitutional claims. *See Block v. District of Columbia*, 492 F.2d 646, 648 (D.C.Cir. 1974); *District of Columbia v. Berenter*, 466 F.2d 367, 373 n. 9, 376 n. 21 (D.C.Cir. 1972); H.R.Rep. No. 91–907, at 165 (1970). The lack of life tenure and of the other attributes of Article III status on the part of the judges of the District of Columbia's courts does not render the exclusive jurisdiction of those courts over federal statutory and constitutional claims constitutionally problematic. *See Swain v. Pressley*, 430 U.S. 372, 382–83, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977). As would be true of a litigant challenging State taxes, the refund and appeal procedures in the Court Reform Act do not preclude a litigant, including appellants, from raising federal statutory and constitutional claims in the District of Columbia courts, with ultimate review of federal claims by the United

States Supreme Court available by writ of certiorari. *See* Court Reform Act, Title I, § 161(a)(7) (codified as amended at D.C.Code § 47–3310 (1981)); *id.* § 161(a)(3) (codified as amended at D.C.Code § 47–3303 (1981)); *id.* § 161(a)(4) (codified as amended at D.C.Code § 47–3304 (1981)); *see also* D.C.Code § 11–102 (1981).

Accordingly, we affirm the dismissal of appellants' complaint for lack of subject matter jurisdiction.[14]

---

14. In view of our disposition, we do not address appellants' contention that administrative remedies under District of Columbia law are inadequate and that pursuit of them would be futile. We note that the District of Columbia Court of Appeals summarily affirmed dismissal of a similar complaint brought by appellants for failure to exhaust administrative remedies. *See Jenkins v. Wash. Convention Ctr. Auth.*, Nos. 00–CV–29 and 00–CV–239 (D.C. August 7, 2000). Further, it appears that on September 27, 1999, appellants filed administrative claims for refunds. *See* Washington Convention Center Authority's Brief at 19; Appellants' Reply Brief at 7 n.4.