Lucy MURRAY, Plaintiff,

v.

David GILMORE, Defendant.

No. CIV.A.99–361 EGS.

United States District Court, District of Columbia.

Sept. 30, 2002.

Veronice Annette Holt, Esquire, Washington, DC.

Robert Arthur Graham, Esquire, Reno & Cavanaugh, P.L.L.C., Washington, DC.

Eilene Brown, Esquire, District of Columbia Housing Authority, Washington, DC.

Mona Lyons, Esquire, Clifford, Lyons & Garde, Washington, DC.

## MEMORANDUM OPINION

SULLIVAN, District Judge.

Plaintiff, Lucy Murray, sues David Gilmore individually and in his official capacity as Receiver of the District of Columbia Housing Authority ("DCHA"). The parties filed cross motions for summary judgment. On March 31, 2002, the Court issued an order granting in part defendant's motion for summary judgment with respect to all claims against defendant in his individual capacity and as to plaintiff's Title VII claims against defendant in his official capacity. The Court denied defendant's motion with respect to plaintiff's due process and unlawful termination claims against defendant in his official capacity. The Court denied plaintiff's motion for summary judgment in its entirety. For the following reasons, and after much consideration, the Court modifies its March 31, 2002 order and grants defendant's motion for summary judgment on all of plaintiff's claims with the exception of plaintiff's due process claim. The Court dismisses without prejudice plaintiff's due process claim. Plaintiff's motion for summary judgment is denied.

## I. Background

### A. Receivership of DCHA

In 1992, Catherine Pearson and other individuals sued District of Columbia Mayor Sharon Pratt Kelly, seeking improvements in public housing. On May 19, 1995, Judge Steffen W. Graae of the Superior Court of the District of Columbia entered an order setting out stipulated conditions of settlement. With the agreement of the parties, Judge Graae appointed David Gilmore as receiver for the District of Columbia Department of Public and Assisted Housing and successor agencies. Order, *Pearson v. Pratt Kelly*, 92–CA–14030 (D.C.Sup. May 19, 1995) ("*Pearson* Order"). The order stated that the receiver was appointed by the court and was "subject to the control of [the] court." *Id.* at 2.

The *Pearson* order provides a non-exhaustive list of Gilmore's duties and responsibilities, and his powers and authority as receiver. The receiver's powers included the "[a]uthority to reorganize and restructure DPAH's, or its successor's, divisions." *Id.* at 5. The order sets forth in detail the receiver's authority to establish personnel policy. In relevant part, the order grants the receiver:

[a]uthority to establish personnel policies; to create, modify, abolish, or transfer positions; to hire, terminate, promote, transfer, evaluate, and set compensation for staff.... Employees who serve at the pleasure of the Mayor ("at-will employees") and employees in their probationary period serve at the will of the Receiver. Employees subject to collective bargaining agreements will be subject solely to the personnel rights set forth in the collective bargaining agreements. As to employees who are not subject to collective bargaining agreements, during the transition from the start-up of the receivership to the implementation of such personnel poli-

cies as the Receiver shall institute, such employees' rights as to benefits, compensation, and termination (except as stated herein) shall be governed by the Comprehensive Merit Personnel Act, D.C.Code § 1–601 *et seq.* Upon the establishment by the Receiver of published personnel policies for the governing of employees who are not subject to collective bargaining agreements, these employees shall be subject solely to the personnel policies the Receiver shall institute governing the employees' benefits, compensation and termination. The personnel policies established by the Receiver for employees who are neither at will employees, employees in their probationary period, nor subject to collective bargaining agreements ("permanent managerial civil service employees"), shall provide that these employees shall not be terminated except for cause or misconduct or for non-performance of duty or due to abolition of thier position (as these terms are defined by the Receiver in the published personnel policies). The personnel policies established by the Receiver for permanent managerial civil service employees shall further provide that salaries and benefits for these employees shall not be reduced, except for misconduct or for economic necessity for the Agency (as these terms are defined by the Receiver in the published personnel policies). The personnel policies established by the Receiver for permanent managerial civil service employees shall further provide these employees with a right for a time-limited appeal.

*Pearson* Order, at 6–7.

Prior to the inception of the receivership, the Office of Public Information at DPAH operated under the supervision, support and direction of the Mayor. However, with the commencement of the *Pearson* receivership and the establishment of DCHA as an independent agency, the DCHA Office of Public Information answered only to the receiver.

## B. Plaintiff's Employment with DCHA

Plaintiff Lucy Murray was employed by the D.C. Department of Public and Assisted Housing and by its successor agency, DCHA, as a Visual and Public Information Officer from December 1987 until her termination on February 16, 1996.

At the time of the *Pearson* order, which established the receivership for DPAH, Ms. Murray was working as a Visual and Public Information Officer at the Office of Fair Hearings. This position was a "permanent managerial civil service" position. *See* Am. Compl. at 2. As such, the *Pearson* order authorized the receiver to dismiss Ms. Murray only for cause, misconduct, nonperformance of duties, or abolition of the position. *See Pearson* Order; Def.'s Mot. at 2.

When Mr. Gilmore assumed the position of receiver on May 22, 1995, Ms. Murray returned to her post at DPAH. Am. Compl. at 14. In September of 1995, DCHA issued a job description for the position of Director of Public Affairs. According to the description, this position was to be a policymaking position, with direct reporting to the receiver, and subject to termination without cause. Four days after the announcement of the opening for Director of Public Affairs, Mr. Gilmore announced that he had hired Arthur Jones, and African–American man, for the position.

On December 8, 1995, Mr. Gilmore issued the DCHA Personnel Policy Manual ("PPM"), a document intended to replace the District's CMPA. Mr. Gilmore made a written determination that the CMPA created an impediment to the recovery of DCHA. *See* Pl.'s Mot., Ex. K (Def.'s Response to Interrogatories, No. 4). The

PPM authorized the receiver to determine the agency's structure and the number of positions in DCHA, and mandated that department directors serve at the pleasure of the receiver.

On January 11, 1996, Mr. Gilmore notified Ms. Murray that her position had been terminated in connection with a reduction in the number of permanent managerial positions at DCHA. Her termination was to be effective as of February 16, 1996. The positions of five women and eight men, in addition to that of Ms. Murray, were abolished in January of 1996. Of the personnel occupying positions that were eliminated, six individuals did not return to work for DCHA in any other position. Three people applied for retirement benefits, and three others were involuntarily separated from DCHA. Ms. Murray and Ms. Nesbitt, both African–American women, were the only individuals who had their employment finally terminated. Mr. Brooms, who was involuntarily separated from employment with DCHA was subsequently employed by another city agency.

## C. Procedural History

On February 23, 1996, Ms. Murray filed an administrative appeal with DCHA alleging that her termination was not part of a proper reduction-in-force. The administrative hearing on plaintiff's claim took place more than a year after plaintiff filed her administrative appeal. Although internal regulations require that findings be issued by the hearing officer within thirty days, Arbitrator Berk issued a recommended opinion some ten months after the parties submitted proposed findings of fact and conclusions of law.

At the administrative hearing, DCHA argued that there was no evidence that it had simply renamed Murray's position and hired Jones for the position. Murray, on the other hand, relied on testimony by the

Agency Representative at the hearing that admitted that Mr. Jones' and plaintiff's jobs were "functionally equivalent." Def.'s Mot., Ex. Q, at 5 (Hearing Ex'mr Recommendation). The representative agreed that both jobs had overall responsibility for the Office of Public Information.

The hearing examiner, noting that "abolishment of positions are [sic] typically conducted for lack of funds, personnel ceilings, reorganization, decrease in work or exercise of reemployment rights," found that the reduction-in-force termination of Murray was pretextual. *Id.* at 11–12. The examiner noted the increase in the number of employees assigned to plaintiff's department and the increase in the department's operating budget, "coupled with the fact that another employee is hired to perform the same duties performed by Murray leads to the inescapable conclusion that the reorganization was a veil to effectuate Ms. Murray's termination.... [T]he record in this proceeding fails to establish that the separation of Murray pursuant to a RIF was proper.... This record clearly establishes that there was merely a reorganization on paper as budgetary constraints and/or shortage of work was due to the hiring of Jones." *Id.* at 14. The hearing examiner recommended that Ms. Murray's separation from DCHA be reversed and that she be reinstated and awarded back pay and benefits. *Id.* at 15.

Five days before summary judgment motions were due in this case, on August 25, 2000, Mr. Gilmore wrote Ms. Murray a letter indicating that he "declined to adopt and implement Hearing officer Susan Berk's recommendation." Mr. Gilmore affirmed the abolition of plaintiff's former position. In doing so, Mr. Gilmore relied on his determination, memorialized in the PPM, that all positions that reported to him would serve at his pleasure.

On February 17, 1999, plaintiff filed the instant lawsuit against defendant Gilmore in his individual and official capacities. Plaintiff's complaint alleges: unlawful discrimination on the basis of sex and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("Section 1981"); violation of plaintiff's due process rights in contravention of 42 U.S.C. § 1983 ("Section 1983"); and unlawful termination in violation of the Comprehensive Merit Personnel Act ("CMPA"), *codified at* D.C.Code § 1–601.01 *et seq.* (2001).

## II. Analysis

### A. Standard of Review

Summary judgement should be granted only if the moving party has shown that there is no genuine issue of material fact and that the. moving party is entitled to judgement as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, if a party opposing summary judgment "fails to make a showing essential to establish the existence of an element essential to that party's case, and in which that party will bear the ultimate burden of proof at trial," summary judgment is appropriate. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. In ruling on cross-motions for summary judgment, the Court will grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law

upon material facts that are not genuinely disputed. *Rhoads v. McFerran,* 517 F.2d 66, 67 (2d Cir.1975).

### B. Administrative Proceedings

■■■ As an initial matter, the Court rejects plaintiff's argument that the factual findings and conclusions of the agency's hearing examiner should be given preclusive effect in this lawsuit. Plaintiff argues that defendant is precluded from relitigating those issues "actually and necessarily decided by the hearing examiner." Thus, she contends, defendant Gilmore is precluded from relitigating the issue of pretextuality in plaintiff's Section 1981 and Section 1983 causes of action.[1]

Plaintiff suggests that unreviewed findings of state administrative agencies have a preclusive effect on federal court proceedings, relying on *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). However, in *Allen,* the Supreme Court held that the full faith and credit statute required federal courts to apply state preclusion rules in Section 1983 actions where there had been an opportunity to litigate the issues actually decided in a prior state court proceeding. Only in *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), did the Court suggest that administrative fact-finding might have a preclusive effect on a Section 1983 claim. *Id.* at 797–98, 106 S.Ct. 3220; *see also Martin v. Malhoyt,* 830 F.2d 237 (D.C.Cir.1987) (finding "no convincing reason" why finding of the MPD Adverse Action Panel would not be binding in a subsequent civil suit against a

---

**1.** Plaintiff does not argue that the hearing examiner's findings should have a preclusive effect for purposes of her Title VII claim, and, indeed, she could not so argue. The Supreme Court has found that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII

claims." *Elliott,* 478 U.S. at 796, 106 S.Ct. 3220. Yet, the EEOC may accord " 'substantial weight to final findings and orders made by State and local authorities in proceedings commenced under State or local [employment discrimination] law.' " *Id.* at 795, 106 S.Ct. 3220 (quoting 42 U.S.C. § 2000e–5(b)).

police officer where the plaintiff's claims arose out of the same incident).

■ However, for administrative proceedings to have a preclusive effect, they must result in a "valid and final judgment." *Arizona v. California,* 530 U.S. 392, 414, 120 S.Ct. 2304, 2319, 147 L.Ed.2d 374 (2000); *see Elliott,* 478 U.S. at 798, 106 S.Ct. 3220 (preclusive effect may exist when "an administrative agency is acting in a judicial capacity and resolves disputed issues of fact"). Here, the hearing examiner only had the authority to issue a recommendation. The receiver then repudiated that recommendation.

Plaintiff maintains that the receiver's only role is to adopt or reject the *recommendation* of the hearing officer. Thus, she argues, the findings of fact and conclusions of law of the hearing officer have preclusive effect, but the recommendation—which is subject to the receiver's approval—does not. Yet, the agency's rules, as cited by plaintiff, *see* Pl.'s Reply, at 10, explicitly define the officer's "written recommendation" as including both the "findings of fact and conclusions" and "a recommendation." Therefore, the receiver's authority to adopt or reject the officer's "recommendation" may well apply to both the officer's findings and ultimate recommendation. Indeed, a contrary construction, the one urged by plaintiff, would result in an absurd situation in which the receiver retains the power to make a final determination of an employee's appeal, but would be bound by the findings and conclusions of the examiner. Accordingly, the Court finds that the hearing examiner's findings cannot be characterized as a final judgment on plaintiff's claims. Therefore,

the findings have no preclusive effect for purposes of the instant litigation.

### C. Plaintiff's Claims against Gilmore in his Individual Capacity

■ Plaintiff's claims against defendant Gilmore in his individual capacity[2] must fail because Gilmore is absolutely immune from civil liability for acts taken within the scope of his position as a court-appointed receiver for the agency. Judicial officers performing official functions are absolutely immune from civil suit, even if they have acted with malice or flagrant disregard for the rights of an aggrieved party. *See Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

■ While the District of Columbia Circuit has not addressed the issue of the scope of a court-appointed receiver's immunity, several other circuits have held that court-appointed receivers are entitled to the same immunity as is enjoyed by the appointing judge, insofar as the acts in question are performed as part of the receiver's duties under the judicial order establishing the receivership. *See, e.g., New Alaska Development Corp. v. Guetschow,* 869 F.2d 1298, 1304 (9th Cir.1989); *Moses v. Parwatikar,* 813 F.2d 891, 893 (8th Cir. 1987); *Property Management & Investments, Inc. v. Lewis,* 752 F.2d 599, 602–03 (11th Cir.1985); *T & W Investment Co. v. Kurtz,* 588 F.2d 801, 802 (10th Cir.1978); *Kermit Const. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1, 2 (1st Cir.1976); *Bradford Audio Corp. v. Pious,* 392 F.2d 67, 72–73 (2d Cir.1968); *Capitol Terrace, Inc. v. Shannon & Luchs, Inc.,* 564 A.2d

**2.** The Court notes that defendant does not argue that his immunity as a judicial officer extends to plaintiff's claims against him in his official capacity. While precedent suggests that judicial immunity bars, or at least limits, relief available when a judicial officer is sued in an official capacity, *see Supreme Court of Va. v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 734–35, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), defendant has apparently waived this defense with respect to plaintiff's claims against him in his official capacity.

49, 53 (D.C.1989); *see also Briscoe v. La-Hue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (where person plays an "integral" part in the judicial process but is not a judge, person may be entitled to absolute immunity).

Thus, the relevant inquiry for this Court is whether defendant Gilmore was acting in a judicial capacity, and within the scope of the authority given to him by the *Pearson* Order, when he terminated plaintiff's employment. Plaintiff was clearly appointed by the D.C. Superior Court to oversee and manage DCHA. As such, he is a judicial officer to the extent that he acts to implement the court's order.

Plaintiff suggests that Mr. Gilmore's personnel decision to terminate her was not the exercise of a judicial function, but was rather an "administrative" function. *See Forrester v. White,* 484 U.S. 219, 229–30, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (finding no judicial immunity where judge performed an act as an employer). Here, the acts of the receiver are clearly "judicial" in nature, as defendant's personnel decisions were made pursuant to specific authority granted to him by court order. To strip the defendant of his quasi-judicial immunity for acts that he was mandated to carry out pursuant to a court order simply because they relate to the "administration" of the agency and its personnel, would undermine the very reasons for affording judicial immunity to such officers. *See Brown v. Costello,* 905 F.Supp. 65, 76 (N.D.N.Y.1995) (policy of affording quasi-judicial immunity to court-appointed receivers is to ensure that they are able to carry out a judge's order without constant fear of litigation).

Plaintiff has not demonstrated that Mr. Gilmore acted beyond the scope of the *Pearson* Order in terminating her employment. Ms. Murray's termination occurred as part of a reduction in force. She contends that this reduction in force was pre-textual. However, that Mr. Gilmore was motivated by unfair, or even malicious, reasons in authorizing the reduction in force, does not affect defendant's quasi-judicial immunity. *See Pierson,* 386 U.S. at 553–54, 87 S.Ct. 1213; *Schinner v. Strathmann,* 711 F.Supp. 1143, 1143 (D.D.C.1989) (dismissing complaint against psychiatrist who interviewed plaintiff to determine the plaintiff's competency because the psychiatrist was acting at the request of the judge and was entitled to absolute immunity regardless of whether he acted "maliciously or corruptly" in the course of the interview). Irrespective of Mr. Gilmore's subjective motivations, his actions clearly fall within the scope of the authority conferred upon him by the *Pearson* Order.

Even drawing all reasonable inferences in favor of plaintiff, the Court is nevertheless left with the inescapable conclusion that she has failed to demonstrate that Mr. Gilmore's actions were taken in clear and complete absence of his court-imbued authority. While plaintiff clearly disagrees with the manner in which defendant used the authority given to him by Judge Graae, such disagreement, as a matter of law, is insufficient to overcome Mr. Gilmore's absolute immunity to civil liability.

## D. Plaintiff's Claims against Gilmore in his Official Capacity

### 1. Plaintiff's Section 1983 Claim

■ The Court grants summary judgment to defendant on all of plaintiff's claims against defendant Gilmore in his individual capacity. Accordingly, plaintiff's Section 1983 claim lies solely against defendant in his official capacity. To assert a claim under Section 1983, plaintiff must show a deprivation of her constitutional rights by a person acting under color of state law. *See* 42 U.S.C. § 1983;

*Meyer v. Reno,* 911 F.Supp. 11 (D.D.C. 1996).

■ Plaintiff asserts that defendant's conduct violated her constitutional right to due process. However, she wholly fails to explain why this Court should find that defendant Gilmore was acting under color of state law. In *King v. Gilmore,* this Court held that a plaintiff could not sue DCHA for Mr. Gilmore's actions as receiver of DCHA. *King v. Gilmore,* Civ. Action No. 99–1176, Order at 2 (Mar. 27, 2000). The Court relied on *Canney v. City of Chelsea,* 925 F.Supp. 58 (D.Mass.1996), in finding that, in light of the DCHA receivership, "city officials were powerless to act [in plaintiff's employment matter], so plaintiff cannot state an actionable claim under § 1983 against the District of Columbia as a matter of law." *King,* Mar. 27, 2000 Order, at 2.

In Canney, the district court's holding that the city was not liable for a receiver's acts was prefaced by an extensive discussion of a municipality's liability under Section 1983. 925 F.Supp. at 66–68. Local governments may only be held liable under Section 1983 "where an injury is inflicted by a government's 'lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Id.* at 67 (quoting *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Canney found that, where the authority of city officials to act had been delegated to a receiver, no Section 1983 claim could lie against the city for the conduct of the receiver. Here, as the Court in *King* recognized, District officials had no authority over defendant Gilmore's actions with respect to DCHA. Thus, if plaintiff is contending that Mr. Gilmore

has acted on behalf of the District of Columbia, this claim is destined to fail.

However, the Court notes that some jurisdictions have recognized that a receiver appointed by a state court may constitute a person acting under color of state law for purposes of a Section 1983 claim. *See Lebbos v. Judges of Super. Ct., Santa Clara Cty.,* 883 F.2d 810 (9th Cir.1989); *Hohensee v. Grier,* 373 F.Supp. 1358 (M.D.Pa. 1974). Yet, judges of the D.C. Superior Court are federally appointed Article I judges. *See United States v. Stewart,* 104 F.3d 1377, 1390–91 (D.C.Cir.1997) (Article I Superior Court judges may act as federal committing magistrates); *see also Jenkins v. Washington Convention Ctr.,* 236 F.3d 6, 10 (D.C.Cir.2001). In any event, the Court is loathe to make arguments for plaintiff at this stage in the proceedings that she has, as yet, failed to articulate. The Court's reluctance is only heightened by its recognition that, had plaintiff made this argument in her papers, defendant may well have claimed that his quasi-judicial immunity extends to this claim. Plaintiff bears the ultimate burden of persuasion on her claims. Plaintiff has simply failed to present the Court with a cognizable legal theory for her Section 1983 claim. The Court will dismiss this claim without prejudice. Plaintiff may move the Court for reinstatement of this claim at such time as she is able to provide the Court with a legal theory, which would permit her to state a Section 1983 claim against defendant in his official capacity.

## 2. Plaintiff's Title VII Claims

Plaintiff claims that she was unlawfully discriminated against on the basis of race and sex in violation of Title VII.[3] Title VII

---

**3.** Plaintiff filed a claim of sex and race discrimination with the D.C. Department of Human Rights ("DHR"). DHR issued a right to sue letter, and plaintiff urges the Court to give

deference to the Department's findings. However, the Court's review of plaintiff's Title VII claims is *de novo. See Elliott,* 478 U.S. at 796, 106 S.Ct. 3220.

provides a cause of action against employer. The statute defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ..., and any agent of such a person...," 42 U.S.C. § 2000e(b), and further defines "person" as including "receivers." 42 U.S.C. § 2000e(a). Because Title VII's coverage is not limited to municipalities, the issues raised by plaintiff's Section 1981 claim against defendant are not relevant to her Title VII claims.

■ Plaintiff may establish her Title VII claims by demonstrating disparate treatment or disparate impact. Plaintiff appears to assert a disparate treatment claim of intentional discrimination.[4] Under the burden-shifting established by the Supreme Court in *McDonnell Douglas*, to succeed on a Title VII claim, plaintiff must first establish a prima facie case of discrimination. 411 U.S. at 802, 93 S.Ct. 1817; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–52, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A plaintiff's prima facie case may be established by showing that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999). The D.C. Circuit has recently held that a plaintiff "need not demonstrate that she was replaced by a person outside her protected class in order to carry her burden of estab-lishing a prima facie case under *McDonnell Douglas*." *Stella v. Mineta*, 284 F.3d 135, 146 (D.C.Cir.2002).

If plaintiff demonstrates a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The plaintiff nevertheless retains the ultimate burden of persuasion and, once the defendant has rebutted the presumption of discrimination, must persuade the court that a discriminatory motive existed or that the employer's proffered explanation should not be credited. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *see also Aka v. Washington Hospital Ctr.*, 156 F.3d 1284, 1290 (D.C.Cir.1998) (en banc).

While it is a close call, the Court finds that Ms. Murray has established a prima facie case of gender-based and race-based discrimination. She has demonstrated that she is an African–American woman and that she was terminated from her employment. Plaintiff relies on the fact that only she and another African American woman were involuntarily separated from their employment to demonstrate the discriminatory nature of her termination. The Court is not entirely convinced that the circumstances of plaintiff's termination give rise to an inference of intentional discrimination, but notes that the prima facie case is not intended to be "onerous."

---

**4.** Plaintiff's arguments focus on the defendant's alleged discriminatory treatment of her personally. However, plaintiff's pleadings also repeatedly mention that she was one of two African American women, who were involuntarily separated from their employment at DCHA. To the extent that plaintiff may be asserting a disparate impact claim, *see* Pl.'s Reply at 17, it would appear she has failed to establish a prima facie case. Her evidence of an alleged disparate impact on African American women employees is tenuous. Further-more, she has not alleged that this impact is the result of "the application of a specific or particular employment practice." *See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) Nowhere in her filings does plaintiff argue that the RIF had a disparate impact. Rather, she contends that she "was singled out by David Gilmore a white male for unique treatment." Pl.'s Reply at 23. Accordingly, the Court treats plaintiff's Title VII claim as a disparate treatment claim.

*Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. Accordingly, the Court will assume that plaintiff has met her prima facie burden.

Defendant Gilmore has proffered a legitimate, nondiscriminatory reason for plaintiff's termination. He contends that Ms. Murray's termination was solely motivated by the January 1996 reduction-in-force. Upon creation of a position in the Office of Public Information with greater independence than had previously existed, defendant argues that it became clear that plaintiff's lower level position was obsolete and the agency accordingly abolished the position.

■ To survive summary judgment, plaintiff must demonstrate that disputed facts exist, from which a reasonable jury could conclude that defendant intentionally discriminated against her on the basis of her race and/or sex. Plaintiff has clearly presented evidence to suggest that defendant's stated reasons for her termination may not have been his sole motivation. Indeed, the Court notes that defendant Gilmore testified that he was displeased with a Washington Post report to which he incorrectly believed plaintiff had contributed.

■ Indications that an employer's proffered reasons may be pretextual may be sufficient to survive summary judgment. *Aka,* 156 F.3d at 1290–94. Yet, even where a Court may not credit defendant's proffered motive, this does not automatically translate into a finding that defendant's motivation was discriminatory. *See Fischbach v. D.C. Dep't of Corrections,* 86 F.3d 1180, 1183 (1996) (to rebut a nondiscriminatory reason given by an employer, " '[i]t is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible' "). Here, drawing all reasonable inferences in favor of plaintiff, the Court finds that no reasonable jury could conclude that plaintiff's termination was motivated by intentional discrimination on account of plaintiff's race and/or sex. Accordingly, the Court enters judgment for defendant, and against plaintiff, on plaintiff's Title VII claim.

### 3. Plaintiff's Section 1981 Claim

■ Under Section 1981, a plaintiff must demonstrate that she has been the victim of intentional discrimination. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Plaintiff has failed to identify any genuinely disputed facts from which a reasonable juror could conclude that defendant intentionally discriminated against her on the basis of her race. Therefore, summary judgment is properly entered for defendant on plaintiff's Section 1981 claim.

### 4. Plaintiff's Unlawful Termination Claim

■ Plaintiff contends that she was terminated in violation of the Comprehensive Merit Personnel Act ("CMPA"), D.C.Code § 1–601.01 *et seq.,* and the *Pearson* Order. The *Pearson* Order explicitly provided that the CMPA was to govern employee rights, benefits and termination until such time as the receiver instituted personnel policies. The *Pearson* Order mandated that permanent managerial civil service employees "not be terminated except for cause or misconduct or for nonperformance of duty or due to abolition of their position." *Pearson* Order, at 7. Mr. Gilmore's new policy was issued on December 8, 1995, after Jones was hired, but prior to Murray's formal termination.

Personnel decisions made prior to December 8, 1995 were governed by the CMPA. Thus, this Court must determine what, if any, personnel actions were taken that pertain to Ms. Murray prior to December 8, 1995. Plaintiff argues that this Court should find that her termination occurred on or before September 25, 1995,

when Mr. Jones was hired to perform a job that the agency representative admitted was the functional equivalent of plaintiff's job.

Plaintiff's contention that she was terminated on or before September 25, 1995, does not find support in the factual record developed by the parties. Plaintiff relies exclusively on testimony of the agency representative at her administrative hearing that Mr. Jones' and plaintiff's jobs were "functionally equivalent." However, the presence of someone with a similar, or even identical, job on the work force, does not necessitate a finding that one's job has been terminated. It may well forebode the elimination of one of the positions, as appears to have been the case here. Nevertheless, plaintiff's own testimony belies her argument that she was "terminated" when Mr. Jones began work. In her deposition testimony, Ms. Murray stated that the "biggest thing" that she remembers not doing after Mr. Jones was hired was not going to senior staff meetings. Murray Dep. at 79. She continued to get press calls and to work on the agency's newsletter. *Id.* She did not know whether Mr. Jones assumed any of her day-to-day responsibilities. *Id.* at 80. Plaintiff was clearly continuing to work at the agency following Mr. Jones' hiring, and at the time that the PPM was implemented by the receiver. Thus, the Court finds that there are not genuinely disputed facts, from which a factfinder could reasonably conclude that Ms. Murray was terminated prior to the implementation of defendant's new personnel policy on December 8, 1995. Accordingly, the Court grants defendant summary judgment on plaintiff's claims that defendant violated the CMPA and the *Pearson* Order.

## CONCLUSION

Ms. Murray's pleadings demonstrate that, to a large extent, she bases her legal arguments on the purported preclu-

sive effect of the hearing examiner's findings that Mr. Jones had been hired for a position that was the functional equivalent of plaintiff's. Yet, it would appear that plaintiff's reliance on these findings caused her to support the claims that she asserts in this lawsuit in only the most cursory fashion. The Court has endeavored to glean from plaintiff's pleadings the legal and factual support for the claims set forth in her complaint. Yet, in response to defendant's motion for summary judgment, it is plaintiff, and not the Court, who has the burden of identifying genuinely disputed facts upon which plaintiff may prevail in her lawsuit.

For the foregoing reasons, and upon careful consideration of the parties' motions for summary judgment, the responses and replies thereto, and the applicable statutory and case law, the Court enters summary judgment for defendant, and against plaintiff on all of plaintiff's claims with the exception of her Section 1981 claim. Plaintiff's Section 1983 claim is dismissed without prejudice subject to reconsideration at such time as plaintiff is able to clearly identify legal and factual bases for proceeding on this claim.

An appropriate Order and Judgment accompany this Memorandum Opinion.

## *ORDER AND JUDGMENT*

Pursuant to Federal Rule of Civil Procedure 58 and for the reasons stated by the Court in its Memorandum Opinion docketed this same day, it is hereby

**ORDERED** that plaintiff's motion for summary judgment [41] is **DENIED;** and it is

**FURTHER ORDERED** that defendant's motion for summary judgment [40] is **GRANTED in part** with respect to Count I (unlawful termination), Count II (Title VII), and any claims pursuant to 42

U.S.C. § 1981, and with respect to Count III (42 U.S.C. § 1983) against defendant in his individual capacity; and it is

**FURTHER ORDERED AND AD-JUDGED** that the Clerk shall enter judgment in favor of defendant and against plaintiffs on Count I, Count II, and any claims pursuant to 42 U.S.C. § 1981, and shall enter final judgment in favor of defendant in his individual capacity only on Count III; and it is

**FURTHER ORDERED** that Count III (42 U.S.C. § 1983), as asserted against defendant in his official capacity, is dismissed without prejudice; and it is

**FURTHER ORDERED** that this case shall be taken off the active calendar of the Court.